UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00021-FDW-DCK

| | |
|---|---|
| MON CHERI BRIDALS, LLC,  )<br> )<br>    Plaintiff,  )<br> )<br>vs.  )<br> )<br>THE PARTNERSHIPS and  )<br>UNINCORPORATED ASSOCIATIONS  )<br>IDENTIFIED ON SCHEDULE "A" and  )<br>JOHN DOES 1-1,000,  )<br> )<br>    Defendants.  )<br> ) | ORDER |

THIS MATTER is before the Court on Plaintiff Mon Cheri Bridals, LLC's Motion for Default Judgment and Permanent Injunction. (Doc. No. 26). After examination of the uncontested evidence submitted by Plaintiff in this matter, as well as the record of this matter as a whole, the Court has determined that a hearing on the instant motion is unnecessary, as the Court has held two prior hearings in this matter, Defendant has failed to appear before the Court in this case, and the decisional process would not be aided by oral argument. Fed. R. Civ. P. 78(b). For the reasons stated herein, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Default Judgment and Permanent Injunction. (Doc. No. 26).

I.   **INTRODUCTION**

This case involves Plaintiff's claims against Defendants for trademark and copyright infringement under the Lanham Act and its claim for unfair and deceptive trade practices under North Carolina State law. Plaintiff's Complaint alleges that Defendants are selling counterfeit and infringing products in violation of Plaintiff's intellectual property rights. Plaintiff asserts that it

1

has identified several of its trademarks on websites owned and operated by Defendants, which are designed to resemble authorized retail Internet stores selling genuine products manufactured by Plaintiff. Plaintiff further asserts that Defendants continue to manufacture, import, distribute, offer for sale and sell counterfeit goods, including formalwear and other social occasion dresses using Plaintiff's trademarks and protected images in violation of Plaintiff's copyrights. Moreover, Plaintiff claims that Defendants falsely advertise the sale of authentic MON CHERI Products through their websites by stealing and copying Plaintiff's copyrighted images and photographs of Plaintiff's genuine products. Plaintiff brings several claims against Defendants, including (1) Federal Trademark Counterfeiting and Infringement (15 U.S.C. § 1114); (2) Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a)); (3) Copyright Infringement (17 U.S.C. § 501); and (4) North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1).

In the pending Motion, Plaintiff seeks entry of default judgement against Defendants in the action alleging violations of the above federal and state statutes. (Doc. No. 26). Plaintiff further requests that the Court (1) prohibit Defendants from operating the Infringing Websites; (2) transfer ownership and control of the Infringing Websites to Plaintiff; and (3) restrain the assets of Defendants in connection with the operation of the Infringing Websites pursuant to 15 § 1117(c) and 17 U.S.C. § 504(c).

## II. BACKGROUND

### A. Factual Background

Plaintiff, Mon Cheri Bridals, LLC, is the registered owner of the seven valid trademark registrations, issued by the United States Patent and Trademark Office (collectively, the "MON CHERI Trademarks"). (Doc. No. 1, ¶ 11). Plaintiff contends that it has "identified several MON

CHERI Trademarks on websites owned and operated by Defendants designed to resemble authorized retail Internet stores selling genuine MON CHERI Products ("Infringing Websites") that Defendants had reproduced, displayed and distributed without authorization or license from Plaintiff in violation of the MON CHERI Trademarks." Id. at ¶ 20. Plaintiff also claims that Defendants have "reproduced, displayed and distributed [photographic images] without authorization or license from Plaintiff" ("Infringing Images") on Defendants' Infringing Websites in violation of the MON CHERI Copyrights. Id. at ¶ 22. Additionally, Plaintiff claims that "Defendants have manufactured, imported, distributed, offered for sale and sold counterfeit goods, including formalwear and other social occasion dresses using the MON CHERI Trademarks and protected images in violation of the MON CHERI Copyrights (the "Counterfeit Products"). Id. at ¶ 24.

### B. Procedural Background

On January 13, 2015, Plaintiff filed its Complaint against Defendants. (Doc. No. 1). That same day, Plaintiff filed its *Ex Parte* Application for Entry of a (1) Temporary Restraining Order ("TRO"), (2) Domain Name Transfer Order; (3) Asset Restraining Order; (4) Expedited Discovery Order; and (5) Service of Process by Email and Electronic Publication Order. (Doc. No. 6). On January 23, 2015, the Court entered an order granting this motion. (Doc. No. 12). Thereafter, on February 3, 2015, the Court held a hearing to allow Defendants and any other affected persons to challenge the appropriateness of the TRO. On February 5, 2015, the Court entered an order extending the TRO for fourteen (14) days, setting it to expire on February 20, 2015. (Doc. No. 16). On February 6, 2015, Plaintiff filed a Motion for a Preliminary Injunction, and the Court subsequently held a hearing on February 19, 2015 in order to receive evidence and hear oral

arguments on this motion. (Doc. Nos. 18, 22). Plaintiff appeared at this hearing; however, Defendants did not appear and, to date, Defendants have made no appearances in this matter. After receiving evidence from Plaintiff, the Court determined that Plaintiff sought extraordinary remedies outside of those traditionally afforded by a preliminary injunction. Accordingly, the Court denied Plaintiff's Motion for a Preliminary Injunction. (Doc. No. 23).

Plaintiff has now filed the motion at issue in this order, seeking an entry of default judgment and permanent injunction against Defendants. (Doc. No. 26). In accordance with their failure to appear in this case, Defendants have not responded to Plaintiff's motion, nor have they responded to the Complaint.

### III. Default Judgment Standard

Under Rule 55(a) of the Federal Rules of Civil Procedure, if a defendant fails to plead or otherwise defend a complaint filed against it, the Clerk of Court may enter a default against that party. Once a default is entered, a plaintiff may seek entry of a default judgment against the defaulting defendant. Fed. R. Civ. P. 55(b).

"Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint." J & J Sports Productions, Inc. v. Romenski, 845 F. Supp. 2d 703, 705 (W.D.N.C. 2012) (citing Ryan v. Homecomings Fin. Network, 253 F. 3d 778, 780 (4th Cir. 2001); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted in original)); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.")). Although facts are admitted as true, "the defendant is not deemed to have admitted conclusions of law and the entry of 'default is not treated as an absolute confession by the

4

defendant of his liability and of the plaintiff's right to recover.'" Id. (quoting Ryan, 253 F.3d at 780 (citations omitted in original); E.E.O.C. v. Carter Behavioral Health Servs., Inc., No. 4:09-cv-122-F, 2011 WL 5325485, at #3 (E.D.N.C. Oct. 7, 2011)). "[I]n determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. Id. (citing Ryan, 253 F.3d at 780 (citing Wef, 630 F. Supp. at 1141); DIRECTV, Inc. v. Pernites, 200 Fed. App'x 257, 258 (4th Cir. 2006) (a "'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law'") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975))) (additional citations omitted).

"[T]he Fourth Circuit has 'repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits.'" J & J Sports Productions, Inc., 845 F. Supp. 2d at 706 (quoting Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted in original)). "Nonetheless, default judgment 'may be appropriate when the adversary process has been halted because of an essentially unresponsive party.'" Id. (quoting SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

## IV. ANALYSIS

### A. Claims

#### 1. Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the

5

sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive … ." 15 U.S.C. § 1114(1)(a). In order to prevail on its trademark infringement claim under the Lanham Act, "a plaintiff must prove that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark 'is likely to cause confusion, or to cause mistake, or to deceive.'" Ray Communications, Inc. v. Clear Channel Communications, Inc., 673 F.3d 294, 300 (4th Cir. 2012) (quoting 15 U.S.C. § 1114(1)(a)).

In the Complaint, Plaintiff asserts that Defendants, "[w]ithout Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the MON CHERI Trademarks … have manufactured, distributed, offered or sale and/or sold the Counterfeit Products to the consuming public in direct competition with Plaintiff's sale of genuine MON CHERI Products … ." (Doc. No. 1, ¶ 33). Plaintiff further asserts that Defendants' use of the MON CHERI Trademarks on the Infringing Websites "is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales." (Doc. No. 1, ¶ 34).

After reviewing the Complaint, the Court concludes that Plaintiff has successfully made out a claim of registered trademark infringement. Therefore, since the Court concludes that Plaintiff has alleged facts supporting the elements of its trademark infringement claim, it GRANTS Plaintiff's motion for entry of default judgment with respect to Count I.

    **2. Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)**

In the Fourth Circuit, trademark infringement claims and false designation of origin claims have the same elements. See Hammerhead Entertainment, LLC v. Ennis, 2011 WL 2938488, *5 (E.D. Va. July 19, 2011). To prevail on its second cause of action, violation of 15 U.S.C. § 1125(a), Plaintiff must show "(1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred 'in commerce;' (4) that the [opposing party] use the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers.'" Id. (quoting Lamparello v. Falwell, 420 F.3d 309, 313 (4th Cir. 2005)) (additional citations omitted).

Given the fact that the elements of trademark infringement are identical to the elements of a false designation or origin claim, the Court concludes that the Complaint alleges sufficient facts to satisfy Plaintiff's claim of false designation of origin against Defendants Nos. 1-12, 14, 15, 17-19, and 21-28.[1] Accordingly, the Court GRANTS Plaintiff's motion for entry of default judgment with respect to Count II against Defendants Nos. 1-12, 14, 15, 17-19, and 21-28, as identified in Schedule A, attached to this Order (hereinafter, "Schedule A").

### 3. Copyright Infringement Under 17 U.S.C. § 501 (Count III)

To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright. Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 801 (4th Cir. 2001) (citing Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 143 (4th Cir. 2000) (citation omitted)).

---

[1] In the Complaint, Plaintiff asserts its claim for Unfair Competition and False Designation of Origin only against these specific Defendants, as they are identified in Schedule "A," which is attached to the Complaint and to this Order. (Doc. No. 1).

In the Complaint, Plaintiff asserts that it "is the owner of all right, title and interest in and to United States Copyright Registration No. VA 1-935-286," which is "valid, subsisting, unrevoked and uncancelled." (Doc. No. 1, ¶ 21). The Complaint further alleges that Plaintiff "owns common law rights in these and other copyrights for use in connection with formalwear and related apparel and other products." Id. Plaintiff refers to its registered and common law copyrights as the "MON CHERI Copyrights." Id. With respect to its claim for copyright infringement against all Defendants, except for Defendant No. 10,[2] Plaintiff contends that it "has been producer and sole owner of the photographic images that are the subject of this action and covered by the MON CHERI Copyrights. (Doc. No. 1, ¶ 44). Therefore, where Plaintiff claims that "Defendants have reproduced, displayed, distributed and made other infringing uses of the protected image, without authorization by Plaintiff," Plaintiff claims that Defendants are liable to Plaintiff for copyright infringement. (Doc. No. 1, ¶¶ 45-46).

After reviewing Plaintiff's Complaint, the Court finds that Plaintiff has established the elements necessary to prove its claim for copyright infringement against all Defendants, except Defendant Number 10, as identified in Schedule A. Accordingly, the Court GRANTS Plaintiff's motion for entry of default judgment with respect to Count III against Defendants Nos. 1-9 and 11-28, as identified in Schedule A. (Doc. No. 1).

### 4. North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1) (Count IV)

To establish a claim under the N.C. Gen. Stat. § 75-1.1, "a plaintiff must show that the defendant committed an unfair or deceptive act, that affected commerce, and proximately injured

---

[2] See Schedule A, attached to this Order, for a list of the Defendants.

the plaintiff." Djarum v. Dhanraj Imports, Inc., 876 F. Supp. 2d 664, 668 (W.D.N.C. 2012) (citing Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 464 S.E.2d 47, 58 (1995)). "'North Carolina's Unfair and Deceptive Trade Practices Act ("UTPA") prohibits the same type of activity that the Lanham Act prohibits' because trademark infringement and false designation undercut the mark holder's goodwill and the consumers' ability to distinguish among products." Id. (citing Universal Furniture Int'l Inc. v. Collezione Europa USA, Inc., 2007 WL 2712926, at *15 (M.D.N.C. Sept. 14, 2007); Microsoft Corp. v. Computer Serv. & Repair, Inc., 312 F. Supp. 2d 779, 785 (E.D.N.C. 2004)). Here, Plaintiff's claim for unfair and deceptive trade practices arises from the same set of facts as that of its Lanham Act claim. Accordingly, the Court finds that Plaintiff has alleged facts sufficient to support its UTPA claim and GRANTS Plaintiff's motion for entry of default judgment with respect to Count IV.

### B. Remedies Sought

Although the Court has determined that Plaintiff has supported its legal claims with sufficient facts for the four counts alleged, the Court must now determine whether it can properly provide the relief that Plaintiff seeks. In the instant motion, Plaintiff requests the Court to enter "default judgment against Defendants and a permanent injunction prohibiting Defendants from engaging in the conduct underlying this case and directing that ownership and control of the Infringing Websites be transferred to Plaintiff." (Doc. No. 26, p. 17). Plaintiff additionally requests "an appropriate award of statutory damages for Defendants' unauthorized use of the MON CHERI Trademarks pursuant to 15 U.S.C. § 1117(c) as well as monetary damages for Defendants' unauthorized use of photographs protected by the MON CHERI Copyrights under 17 U.S.C. § 504(c)." Id.

### 1. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. See 15 U.S.C. § 1116(a). Additionally, in a default judgment setting, injunctive relief is available.

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93 (2006).

With respect to the first factor, the allegations in Plaintiff's Complaint, which are deemed admitted in light of Defendants' default, sufficiently prove irreparable injury. The Complaint alleges that Defendants' continued sale of Counterfeit Products is likely to cause, and is causing, confusion among the general purchasing public and is likely to deceive the public into believing that the Counterfeit Products are associated with or are otherwise authorized by Plaintiff, thereby damaging Plaintiff's reputation, goodwill and sales. (Doc. No. 1, ¶ 34). Given these facts, and the Fourth Circuit's recognition that "irreparable injury regularly follows from trademark infringement," Lone Star Steakhouse & Saloon, 43 F.3d 922, 939 (4th Cir. 1995), the Court concludes that Plaintiff has satisfied the first prong necessary for the issuance of a permanent injunction.

Next, Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Infringing Websites because Plaintiff cannot control the quality of what appears to be its products in the marketplace. An award of money damages alone will not cure the injury to

Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, without an injunction, Plaintiff will continue to suffer infringement and be forced to bring successive suits for monetary damages. Accordingly, legal remedies are inadequate to remedy the violations in this case.

Plaintiff has also demonstrated that the balance of hardships weighs in its favor. Defendants possess no legal right to continue their trademark and copyright infringement activities. Defendants' continued use of marks similar to Plaintiff's MON CHERI Trademarks has the potential to further mislead consumers as to the origin and affiliation of Defendants' products and will continue to undermine Plaintiff's genuine products, goodwill and reputation. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks and copyrights, which is an illegal act. As a result, the third factor favors issuance of a permanent injunction.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. See, e.g., Toolchex, Inc. v. Trainor, 2009 WL 2244486, *3 (E.D. Va. July 24, 2009) ("Preventing confusion is in the public interest … .").

For the reasons stated above, the entry of a permanent injunction against Defendants is appropriate. Therefore the Court GRANTS Plaintiff's request for entry of a permanent injunction. Defendants, their agents, servants, employees and all persons who are in active concert or participation with Defendants, who receive actual notice of this injunction, are PERMANENTLY enjoined from:

1. Using the MON CHERI Trademarks, including any trademark, service mark, logo, design, or source designation of any kind owned or controlled by Plaintiff, or any reproduction, counterfeit, copy or colorable imitation of the MON CHERI Trademarks in connection with the manufacture, importation, distribution, advertisement, offer for sale and/or sale of Counterfeit Products;

2. Using the MON CHERI Trademarks, including any trademark, service mark, logo, design, or source designation of any kind owned or controlled by Plaintiff, or any reproduction, counterfeit, copy or colorable imitation of the MON CHERI Trademarks in connection with the Infringing Websites, other online services or activities, or any other goods or services, that is likely to cause confusion, mistake, deception, or public misunderstanding that such Infringing Websites, other online services or activities, or other goods or services are produced or provided by Plaintiff, or are sponsored or authorized by or in any way connected or related to Plaintiff;

3. Passing off, inducing or enabling others to sell or pass off any Counterfeit Products as, and for, genuine products manufactured by Plaintiff;

4. Shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing, or disposing of in any manner bridal dresses, social occasion dresses or other formalwear falsely bearing the MON CHERI Trademarks, or any reproduction, counterfeit, copy or colorable imitation of same;

5. Utilizing the Infringing Websites and registering, trafficking in, or using any additional domain names that use or incorporate any of the MON CHERI Trademarks, or any colorable imitation thereof;

6. Operating and/or hosting the Infringing Websites;

7. Using images covered by the MON CHERI Copyrights or any of Plaintiff's original photographs that Plaintiff uses to advertise the sale of original MON CHERI Products; and

8. Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the above subparagraphs (1) through (7).

### 2. Transfer of Domain Names

Plaintiff also requests that the Court order Defendants to transfer ownership and control of the Infringing Websites to Plaintiff. The Court has broad equity powers, which allow it to fashion injunctive relief necessary to stop the Defendants' infringing activities. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15 (1971). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name. See 15 U.S.C. § 1125(d)(1)(C), (d)(2). Moreover, courts have found that they are not limited in providing this remedy in that context. See Under Armour, Inc. v. 51nfljersey.com, 2014 WL 1652044, *6 (S.D. Fl. Apr. 23, 2014) (slip copy) (citing Philip Morris USA v. Otamedia Ltd., 331 F. Supp. 2d 228, 230-231 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a))).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's intellectual property rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities. Ordering the transfer of the Subject Domain Names identified on Schedule A to Plaintiff, where they may be disabled from further use as platforms for the sale of counterfeit goods, is appropriate to achieve this end. Therefore, the Court GRANTS Plaintiff's request to transfer ownership and control of the Infringing Websites, listed on Schedule A attached to this Order, to Plaintiff.

### 3. Transfer of Domain Names Pursuant to the All Writs Act

Plaintiff requests an injunction under the All Writs Act to enjoin "(1) the maintenance and operation of the Infringing Websites; (ii) current defendants in this action from rejoining the illegal marketplace to sell Counterfeit Products using new domain names; (iii) non-parties with notice of the injunction from selling Counterfeit Products using new domain names; and (iv) non-parties with notice of the injunction from assisting any person or entity from selling Counterfeit Products … ." (Doc. No. 26, pp. 16-17). The Court finds that this relief is not appropriate in this case. Such relief raises due process concerns given the notice required to be given to third parties not involved in this action. Moreover, such relief does not meet the requirement that any writ issued by this Court be "agreeable to the usages and principles of law." See 28 U.S.C.A. § 1651(a). Accordingly, the Court DENIES Plaintiff's request for an injunction pursuant to the All Writs Act.

### 4. Retrain Assets of Defendants

Without providing explanation or legal support, Plaintiff requests the court to issue a permanent injunction "restraining the assets of Defendants in connection with the operation of the

Infringing Websites in order to satisfy an appropriate statutory award of damages to Plaintiff pursuant to 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(c)." (Doc. No. 26, p. 2). Plaintiff simply asserts that "without the issuance of an asset restraint, Plaintiff will have little hope of recovering the illicit funds Defendants have obtained and are held by financial institutions that have unknowingly supported Defendants' illegal operations." (Doc. No. 26, p. 3). The Court finds no support to justify such extraordinary relief. Accordingly, Plaintiff's request for the Court to restrain the assets of Defendants in connection with the operation of the Infringing Websites is DENIED.

### 5. Statutory and Monetary Damages

In addition to the injunctive relief sought, Plaintiff also "requests an appropriate award of statutory damages for Defendants' unauthorized use of the MON CHERI Trademarks pursuant to 15 U.S.C. § 1117(c) as well as monetary damages for Defendants' unauthorized use of photographs protected by the MON CHERI Copyrights under 17 U.S.C. § 504(c)." (Doc. No. 26, p.17). Plaintiff has failed to adequately support its request for such damages. Accordingly, Plaintiff's request for statutory and monetary damages is DENIED.

## V.     Conclusion

For the reasons discussed above, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Default Judgment and Permanent Injunction. (Doc. No. 26). Specifically, Default Judgment is entered with respect to Counts I, II, III, and IV, as outlined above in this Order.[3] As to Plaintiff's requested relief, Defendants, their agents, servants, employees and all other persons

---

[3] The Court notes that certain Defendants are exempt from the default judgment entered in Counts II and III. Specifically, only Defendants 1-12, 14, 15, 17-19, and 21-28, as identified in Schedule A attached to this Order, are subject to the entry of default judgment with respect to Count II. Additionally, Defendant 10, identified in Schedule A attached to this Order, is not subject to the entry of default judgment with respect to Count III.

who are in active concert or participation with Defendants, who receive actual notice of this injunction, are PERMANENTLY ENJOINED from the activities described in Section IV(B)(1) of this Order. Additionally, the Court orders the transfer to Plaintiff of the Subject Domain Names identified in Schedule A, attached to this Order, where they may be disabled from further use as platforms for the sale of counterfeit goods.

However, for the reasons stated in this Order, the Court DENIES Plaintiff's request for an order permanently enjoining Defendants and third parties pursuant to the All Writs Act, as requested by Plaintiff, or restraining the assets of Defendants in connection with the operation of the Infringing Websites. The Court also DENIES Plaintiff's request for statutory and monetary damages.

The Court also notes that additional sanctions may be considered at a later date to ensure compliance with the Permanent Injunction. Defendants are on notice that non-compliance may require the entry of any additional relief necessary to enforce the Court's Orders and jurisdiction.

Additionally, Counsel for Plaintiff is directed to serve this Order on Defendants and certify with the Court the date of such service within one week of the date of this Order.

IT IS SO ORDERED.

Signed: June 3, 2015

_____
Frank D. Whitney
Chief United States District Judge

## SCHEDULE "A"

| Defendant No. | Defendant Domain |
|---|---|
| 1 | http://www.acneindex.com/ |
| 2 | http://www.areitzig.com/ |
| 3 | http://www.aspirewyoming.com/ |
| 4 | http://www.batalhadosgames.com/ |
| 5 | http://www.bridalamazing.com/ |
| 6 | http://www.cheapformalstore.com/ |
| 7 | http://www.eastbayfeisca.com/ |
| 8 | http://www.esexcafe.com/ |
| 9 | http://www.excelenciasedes.com/ |
| 10 | http://www.framedtheseries.com/ |
| 11 | http://www.fti-design.com/ |
| 12 | http://www.fundusguide.com/ |
| 13 | http://www.izidressbuy.com/ |
| 14 | http://www.leawasson.com/ |
| 15 | http://www.livebettergroup.com/ |
| 16 | http://www.lovingprom.com/ |
| 17 | http://www.nancysamstein.com/ |
| 18 | http://www.pre-naoetsu.com/ |
| 19 | http://www.snohostories.com/ |

| | |
|---|---|
| 20 | http://www.storegowns.com/ |
| 21 | http://www.tishprouse.com/ |
| 22 | http://www.viadaevents.com/ |
| 23 | http://www.victoriaseyes.com/ |
| 24 | http://www.victoriaweddingdress.co.uk/ |
| 25 | http://www.vsi-mebli.com/ |
| 26 | http://www.whimsybynight.com/ |
| 27 | http://www.willguzzardi.net/ |
| 28 | http://www.yedang-japan.com/ |